**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MISTY DAWN SLATE,<br><br>        Plaintiff,<br><br>   v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>        Defendant. | Case No.  1:23-cv-00092-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## I.  INTRODUCTION

Plaintiff Misty Slate ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 10).

## II.     BACKGROUND

Plaintiff was born on December 20, 1971. (Administrative Record ("AR") 314). She filed a claim for DIB on March 25, 2020, alleging a disability onset date of January 1, 2018. (AR 315). In her application, she alleged disability based on her "PTSD; Anxiety, severe; COPD; Learning Disability; and dyslexia." (AR 508). Plaintiff has a 10th-grade education and previous work experience in security. (AR 509-510).

### A.     Relevant Evidence of Record[3]

Plaintiff's medical records show she has received mental health treatment for anxiety, post-traumatic stress disorder ("PTSD"), and schizophrenia (AR 137, 735), which often interfere with her daily life. (*See, e.g.*, AR 159) ("Goal: Anxiety does not interfere with daily functioning"). Plaintiff was hospitalized on April 3, 2019, based on her psychosis and suicidal and homicidal ideation. (AR 583). Upon examination, she was disheveled, paranoid and admitted to auditory hallucinations. (AR 583). She also reported seeing people hiding in bushes and others following her. (AR 584). Throughout her hospitalization, she remained suicidal with poor impulse control and with impaired insight and judgment, and she felt unsafe around other people. (*See, e.g.*, AR 600, 602, 605). She was discharged on April 8, 2019. (AR 586).

Plaintiff underwent outpatient psychiatric treatment from June 2019 to October 2021. In June 2019, she reported a history of being raped. She also reported auditory hallucinations despite using anti-psychotic medications. (AR 631). She displayed limited insight in July, October, and December 2019. (AR 633, 635, and 637). In July 2019, she was homeless. (AR 631). With regard to her treatment, her psychiatrist noted medication helped with control/relief of "disturbing symptoms of her condition," and she was clinically stable because of the medication. (AR 633). Plaintiff continued to report PTSD symptoms, as well as auditory and visual hallucinations. (AR 649 [May 2020]; 650 [September 2020]). Plaintiff reported struggling to sleep at night in July 2021, and she exhibited limited insight and judgment. (AR 668). Her PTSD symptoms increased in August 2021, and she exhibited poor insight, judgment, and paranoia, and she again reported

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

auditory hallucinations.  (AR 667).

At the hearing, Plaintiff reported working three hours per week because she suffers from social anxiety. (AR 283). She reported being demoted from her previous job at the Travelers Motel for her unacceptable behavior (AR 284-85). She testified she leaves her house up to four times per week, mostly to visit her daughter's house. (AR 287). Crowds, men generally, and white vans trigger her mental illnesses. (AR 287). She takes medications, though they make her drowsy. (AR 288). She completes household chores, on occasion with help from a friend. (AR 288). Plaintiff reports hearing voices of people being tortured, which causes her the most issues, as she often calls the police to report what she believes to be someone being hurt. (AR 292).

Plaintiff underwent a psychological evaluation on August 15, 2021. (AR 657). The evaluator noted Plaintiff was disheveled with compromised hygiene, but Plaintiff stated she was able to provide her activities of daily living (including her bathing and hygiene) for herself. (AR 658). Plaintiff reported paranoia, nightmares, mood swings, panic attacks, depression, anxiety, and problems with authority. (AR 657). The examiner concluded Plaintiff's results from the Wechsler Adult Intelligence Scale, Fourth Edition (the "WAIS-IV" test) suggested mildly compromised auditory and visual working memory functioning. (AR 660). Other testing scores indicated a mild impairment in sequencing, organizing, and mental flexibility and executive functioning. (AR 660). Plaintiff's treating therapist, Maxine Sausa-Correia, LMFT, completed a medical source statement on March 22, 2022. (AR 32). Ms. Sausa-Correia stated Plaintiff had difficulty with concentration, comprehension and staying on task. (AR 36). She noted Plaintiff often struggled to interact socially. (AR 32).

Plaintiff's records also indicate she suffers from various musculoskeletal impairments. She reported elbow, shoulder, and back pain in September 2021. (AR 713). An x-ray of her left shoulder showed joint space narrowing and sclerosis with osteophyte formation in the glenohumeral and AC joints (AR 688), and an x-ray of her left elbow showed spur formation consistent with chronic soft tissue injuries. (AR 689). An October 2021 MRI of her cervical spine showed multilevel cervical spondylosis with broad-based disc bulges at C3-4, C4-5, C5-6, and C6-7, with slight contouring of the spinal cord, and progressed moderate and severe neuroforaminal

narrowing.  (AR 686-87).

Plaintiff met with Weizheng Jiang, M.D., on March 14, 2022[4].  Plaintiff again reported neck pain and that lifting, bending over, driving, or sitting for more than 10 minutes exacerbated it.  (AR 28).  She also reported that physical therapy did not help.  (AR 28).  Dr. Jiang suggested Plaintiff was a surgery candidate, though he wanted to try to relieve Plaintiff's pain with epidural steroid injections first.  (AR 29).  Plaintiff received a medial branch block in her cervical spine on July 13, 2022, which provided her a roughly 60 percent relief of her neck pain for roughly 24 hours.  (AR 13, 17).  Subsequent examinations in August and September 2022 showed tenderness in Plaintiff's trapezius, posterior neck, and cervical facets.  (AR 13, 17).  She also presented with positive facet loading and a limited range of motion in her neck.  (AR 13, 17).  Her treating doctor recommended additional further medial branch blocks, and if those blocks did not work, Plaintiff would be considered for a cervical epidural steroid injection or a spinal cord stimulator.  (AR 14).  At the telephonic hearing, Plaintiff testified her neck and back pain prohibits her from undertaking regular activities.  (*See* AR 293-96).

**B.    The ALJ's Decision**

The Commissioner denied Plaintiff's application for benefits initially on June 24, 2020, and again upon reconsideration on November 25, 2020.  (AR 337, 331).  Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on October 25, 2021.[5]  (AR 55).  Plaintiff was not represented by counsel.  (AR 272).  In a decision dated January 20, 2022, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 51-62).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 30, 2020 (step one), though the ALJ noted Plaintiff received unemployment insurance benefits, which requires an individual to generally report they are able to work.  (AR 53).  Based on this fact, the ALJ noted an individual receiving unemployment insurance benefits who is alleging disability may not be as limited as they allege.  (AR 53).  At step two, the ALJ found that

---

[4] The following records were submitted post-decision to the Appeals Council for consideration.

[5] The ALJ originally scheduled the hearing for July 9, 2021, but Plaintiff did not appear.  (AR 55).  Following receipt of Plaintiff's response of a show cause notice, the ALJ scheduled a second hearing.

Plaintiff suffers from the following severe impairments cervical spondylosis, left shoulder osteoarthritis, history of left elbow soft tissue injury, post-traumatic stress disorder ("PTSD"), depressive disorder not otherwise specified, and substance use disorder in reported remission (20 CFR 416.920(c)). (AR 53). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 54).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[6] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff was limited to medium work as defined in 20 C.F.R. 416.967(b) with the following limitations:

> the claimant is capable of understanding, remembering, and sustaining concentration, persistence, and pace for noncomplex and routine work tasks throughout a normal workday and workweek, with customary breaks. The claimant is able to accept supervision and interact with coworkers on a non-collaborative and superficial basis. The claimant can have brief, infrequent public contacts. The claimant can adapt to routine work environments, recognizing typical workplace hazards, traveling to routine locations, and setting goals independently within that framework.

(AR 56).

At steps four and five, the ALJ found that Plaintiff was unable to perform any past relevant work (AR 60), and the transferability of job skills was not relevant because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not Plaintiff has transferable job skills. (AR61). The ALJ concluded that considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could

---

[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

perform. (AR 24). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform the following jobs: Cleaner, II (Dictionary of Occupational Titles ("DOT") 919.687-014); Cleaner, Industrial (DOT 381.687-018); and Hand Packer (DOT 920.587-018). (AR 61). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 61-62).

Plaintiff sought review of this decision before the Appeals Council, which denied review on November 30, 2022. (AR 1). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.  LEGAL STANDARDS

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to

perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,

143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.     DISCUSSION**

Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because the ALJ had a heightened duty to develop the record, and the ALJ should have obtained a medical opinion analyzing Plaintiff's musculoskeletal impairments, including her cervical spine pain and left upper extremity dysfunction.  For the reasons explained below, the Court finds that the ALJ erred in this respect, and that error was not harmless. Because the Court will remand the matter on that basis, the Court will decline to address Plaintiff's remaining assertions of error.

**A.     Legal Standard**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a).  It reflects the most that a claimant can do despite their limitations.  SSR 96-8p, 1996 WL 374184, at *1.  In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective").  Therefore, an ALJ errs when they provide an incomplete RFC ignoring "significant

8

and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 416.946. The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and their decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Claimants carry the burden to prove they are disabled. 20 C.F.R. § 404.1512(a). However, "Social Security proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111–12 (2000)). An ALJ has a responsibility to develop a "complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

> The ALJ is not a mere umpire at such a proceeding . . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

*Id.* (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). However, the duty to develop the record further is only triggered when there is ambiguous evidence, or the record does not allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record fully is heightened when a claimant is mentally ill and unable

to protect his or her own interests. *Id.* However, if the record includes "specific and sufficient" evidence to evaluate a claim, the record is neither ambiguous nor inadequate. *Gurin v. Saul*, 842 F. App'x 45, 48 (9th Cir. 2021). An ALJ may discharge their duty by subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

**B.     Analysis**

The Commissioner first contends that the ALJ properly advised Plaintiff of her right to representation at the disability hearing. While the ALJ repeatedly advised Plaintiff of her right to representation (*See, e.g.*, AR 272, 347, 418-19, 423-24), Plaintiff does not assert her due process rights were violated, but rather, the ALJ was not "especially diligent" in developing the record as required when the claimant is unrepresented and mentally ill. (Doc. 16 at 4, citing *McLeod v. Astrue*, 640 F.3d 881, 885, 888 (9th Cir. 2011)). The ALJ had a heightened duty to develop the record, as Plaintiff has a long history of mental illness. *Id.* As the ALJ noted, Plaintiff's severe impairments include her PTSD and depressive disorder. (AR 53). The record indicates Plaintiff is regularly documented to lack judgment and exhibit poor insight. (AR 633, 635, 673, 667, 668).

The ALJ found Plaintiff's cervical spondylosis, left shoulder osteoarthritis, and history of left elbow soft tissue injury amounted to severe medically determinable impairments. (AR 53). The medical evidence supports Plaintiff's consistent testimony that her musculoskeletal conditions limit her ability to carry out certain tasks. For example, an x-ray of Plaintiff's left shoulder showed joint space narrowing and sclerosis with osteophyte formation in the glenohumeral and AC joints (AR 688), and an x-ray of her left elbow showed spur formation consistent with chronic soft tissue injuries. (AR 689). An October 2021 MRI of Plaintiff's cervical spine showed multilevel cervical spondylosis with broad-based disc bulges at C3-4, C4-5, C5-6, and C6-7, with slight contouring of the spinal cord, and progressed moderate and severe neuroforaminal narrowing. (AR 686-87).

Because the record contained no medical opinion interpreting the functional limitations resulting from Plaintiff's musculoskeletal impairments, the ALJ's duty to further develop the record was triggered, warranting either a consultative examination or medical expert opinion by a

10

1   physician who had access to Plaintiff's medical records. *See Banks v. Barnhart*, 434 F. Supp. 2d
2   800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent
3   medical opinion . . . and must not succumb to the temptation to play doctor and make . . .
4   independent medical findings."). Two state agency physicians reviewed Plaintiff's medical
5   records, but their evaluations predated the submission of evidence pertaining to Plaintiff's
6   musculoskeletal impairments. (AR 305-306, 321). The ALJ provides only a cursory analysis of
7   Plaintiff's conditions, noting that "in consideration of imaging showing osteoarthritis in the left
8   shoulder, a left elbow spur and multilevel cervical spondylosis, while the claimant retained
9   normal strength, I adopted a medium exertional level residual functional capacity." (AR 60).
10          While the RFC is a legal conclusion reserved to the Commissioner (20 C.F.R. § 416.946;
11  *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the
12  responsibility of the ALJ, not the claimant's physician, to determine the residual functional
13  capacity.")), an ALJ generally may not interpret medical imaging. *See, e.g., Le MacKay v.*
14  *O'Malley*, Case No. 1:22-cv-01633-SKO, 2024 WL 169175, at *7 (E.D. Cal. Jan. 16, 2024)
15  ("While there are no bright line rules circumscribing the ALJ's authority to interpret medical
16  evidence independently, some courts, including this one, have found that an ALJ errs in
17  independently reviewing medical evidence when the evidence concerns . . . raw medical data such
18  as complex imaging findings or laboratory testing results.") (citing *Nguyen v. Chater*, 172 F.3d
19  31, 35 (1st Cir. 1999); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5
20  (E.D. Cal. Jan. 2, 2019); and *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198,
21  at *4 (E.D. Cal. Oct. 27, 2015)). By considering Plaintiff's imaging (which had no accompanying
22  medical opinion on how it affected Plaintiff's RFC), the ALJ impermissibly used her lay
23  knowledge to make medical interpretations of examination results. *Sophia G., v. Kijakazi*, No.
24  ED CV 20-2574-E, 2021 WL 6104309, at *5 (C.D. Cal. Oct. 1, 2021) ("Given the absence of any
25  other relevant medical opinions of record, the ALJ evidently applied the ALJ's own lay
26  interpretation of the medical treatment records to define Plaintiff's physical residual functional
27  capacity. An ALJ cannot properly rely on the ALJ's own lay knowledge to make medical
28  interpretations of examination results or to determine the severity of medically determinable

impairments.") (citing *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999).

The Commissioner's contention that the record contained specific and sufficient evidence to evaluate Plaintiff's claim is unpersuasive as an ALJ cannot "cherry-pick" some parts of the medical evidence but, rather, must evaluate the evidence "in context." *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Considering these records in their context, they are insufficient to evaluate Plaintiff's claim. For example, the Commissioner cites certain medical records stating Plaintiff has no musculoskeletal abnormalities, but at some of those appointments, Plaintiff was seeking post-operative care for a femoral hernia, and there is no indication the treating physician inquired into anything other than her recent surgery during the appointment. (Doc. 15 at 9, citing AR 694-95). The other citations by the Commissioner, such as notes from office visits in March 2020 and September 2021, indicate little about Plaintiff's joint-related conditions, at most listing that there are no "obvious" deformities of her left elbow or shoulder, but that her elbow is tender to palpation. (AR 714-15). The treating physician ordered an MRI and x-rays at Plaintiff's September 2021 appointment (AR 714-15), and the Commissioner does not address this fact or any of the test results that followed showing multilevel cervical spondylosis with broad-based disc bulges at C3-4, C4-5, C5-6, and C6-7, with slight contouring of the spinal cord, and progressed moderate and severe neuroforaminal narrowing.

Medical documents submitted to the Appeals Council after the ALJ's decision reinforce the need to develop the record further. While these documents were not before the ALJ, they are a part of the record to be considered when reviewing whether the ALJ's decision was supported by substantial evidence. *Brewes v. Commissioner of Social Sec. Admin*, 682 F.3d 1157 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") Plaintiff received a medial branch block in her cervical spine in July 2022, which provided some pain relief. (AR 13, 17). Subsequent examinations in August and September 2022 showed tenderness in Plaintiff's trapezius, posterior neck, and cervical facets. (AR 13, 17). Plaintiff's treating physician has opined she may be a surgery candidate, or she may need to seek a spinal

cord stimulator.  (AR 14, 29).  Based on this additional evidence and the ALJ's failure to develop the record, the Court finds the ALJ's determination is not supported by substantial evidence.

The Court further finds that the ALJ's error was not harmless.  *Stout v. Comm'r Soc. Sec.*, 454 F.3d 1050, 1055 (finding that failing to discuss particular evidence is not harmless unless no reasonable ALJ, when crediting the testimony, could have reached a different disability determination).  It is unlikely the ALJ's error was "inconsequential," as medical opinion evidence may have the ALJ's RFC, as well as the testimony of the VE.

**C.     Remand for Further Proceedings is Appropriate**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted).  The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule").  In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).  Having found that the ALJ failed to fully develop the record, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings are necessary.  The Court will, therefore, remand this matter for further proceedings.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to develop the record further,

the Court need not address Plaintiff's other allegations of error. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ committed legal error and therefore the decision is not supported by substantial evidence. Therefore, the ALJ's decision is VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Misty Slate and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 5, 2024**                    /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE